**E-FILED on** _____7/8/05_____

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELIZABETH WILKERSON,<br><br>Plaintiff,<br><br>v.<br><br>RIFFAGE.COM DISABILITY INCOME PROTECTION PROGRAM; SUN LIFE ASSURANCE COMPANY OF CANADA,<br><br>Defendants. | No. C-03-04926 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR FURTHER DISCOVERY<br><br>[Re Docket No. 59] |

On October 18, 2004, the court granted plaintiff limited discovery into an alleged conflict of interest involving defendant Sun Life's Assurance Company of Canada ("Sun Life"). Plaintiff now seeks additional discovery regarding said conflict of interest. Sun Life opposes the request. The motion was heard on June 17, 2005. For the following reasons, the court grants in part and denies in part plaintiff's request for additional discovery.

## I. BACKGROUND

Plaintiff claims that she was improperly denied benefits under a disability plan governed by ERISA provisions. She originally submitted her claim on February 16, 2001, was denied benefits on June 1, 2001, and, after multiple appeals, received a final decision denying benefits on November 27, 2002. She subsequently filed the action currently before this court and, on May 24, 2004, moved the court to determine

the standard of review for her disability claim and permit her to conduct discovery into the extent Sun Life's review of the administrative record. After reviewing the moving papers and conducting a hearing on the matter, the court tentatively determined that the abuse of discretion standard of review was appropriate because (1) the disability plan conferred discretion on Sun Life to determine eligibility for benefits and (2) plaintiff had failed "to present material, probative evidence, beyond the mere fact of [an] apparent conflict of interest" as required under the burden-shifting analysis in *Tremain v. Bell Indus. Inc.*, 196 F.3d 970, 976 (9th Cir. 1999).

While the matter was under submission, plaintiff filed a supplemental declaration arguing that an email discovered after the hearing raised an issue with regard to whether Sun Life had an actual conflict of interest. The email, sent by the director of the long term disability ("LTD") claims department, Steve Bailey, uses the phrase "Kick It Up a Notch" to introduce a lottery program in which an LTD claims department employee's chances of winning a lottery prize increases for each qualifying closure or termination.

After considering Sun Life's supplemental response, the court found that this email raised concern about the possibility of Sun Life's conflict of interest for the following reasons:

> (1) the e-mail was written and the lottery proposed by the then Director of Sun Life's Group Disability Claim Department; (2) plaintiff's claim was still in the appeal process; (3) the express purpose of the lottery was to encourage closures and terminations of claims (which does not occur if the claim is approved) so as to "have an impact on the bottomline results of the business" (id.); (4) in June 2002 Sun Life was approximately $1,000,000 behind its original projection for the month and significantly behind on terminations/denials; and (5) the claims group apparently recognized and had talked for months about a need to create an environment fostering closures. ("Over the past months, we have been talking quite a bit about "Kicking it Up a Notch", creating an environment for individuals to excel on professional performance and contribute to positive results within our division . . . (and) have an impact on the bottomline results of the business." (Id.).

October 18 Order at 8. Accordingly, the court granted the plaintiff sixty days to perform limited "discovery on the effect of the program" and ordered the parties to submit supplemental briefing on the standard of review. The court specified discovery could include: "(1) a 30(b)(6) deposition of the person most knowledgeable about the "Kick It Up a Notch" program, its development, application, implementation, and cancellation; (2) any written records of the development, application, implementation, and cancellation of the "Kick It Up a Notch" program; (3) any written records of any awards or incentives given for terminations/closures of LTD claims between January 1, 2000 and December 31, 2003; (4) the deposition of Steve Bailey and one representative claims person subject to Bailey's supervision; and (5) summary records showing total number

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR FURTHER DISCOVERY– 03-04926 RMW
MAG                                                                                       2

of LTD claims made, closed, or terminated for each month starting December 1999 and ending December 2003." October 18 Order at 9.

Plaintiff has completed the discovery permitted under the court's October 18 Order and now requests that the court authorize additional discovery into Sun Life's alleged conflict of interest.

## II. DISCUSSION

### A.  Limited Discovery in ERISA Cases

Two primary goals of ERISA are to increase the likelihood beneficiaries will receive full benefits, and to maintain premium costs at a reasonable level. *See Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094 (9th Cir. 1999) (quoting 29 U.S.C. § 1001b(c)(3), (5)). The Supreme Court has emphasized "the need for prompt and fair claims settlement procedures" in ERISA governed plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). "In the context of discovery, the court should therefore balance the goal of maintaining low premium costs which may be effected by limiting the scope of discovery, and thus the expense of litigation, with the demands of reaching an informed and independent review of the benefits decision." *Medford v. Metro. Life Ins. Co.*, 244 F. Supp. 2d 1120, 1128-29 (D. Nev. 2003). Thus, discovery is limited in ERISA cases. *Waggener v. UNUM Life Ins. Co. of America*, 238 F. Supp. 2d 1179, 1185 (S.D. Cal. 2002) ("Because of the interest in both maintaining premium costs at a reasonable level and allowing for the prompt and fair resolution of claims, discovery simply cannot be as broad and overreaching [in ERISA cases] as in other types of cases.").

Where the plan beneficiary plaintiff provides "material, probative evidence of a conflict," such evidence may create a rebuttable presumption that the administrator's decision denying benefits "was in fact a dereliction of its fiduciary responsibilities." *Regula v. Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130, 1145 (9th Cir. 2001), *vacated on other grounds by* 539 U.S. 901, 156 L. Ed. 2d 109, 123 S. Ct. 2267 (2003) (citing *Lang v. Long-Term Disability Plan*, 125 F.3d 794, 798 (9th Cir.1997)). In such a case, the court will conduct a de novo review of the administrative record, where it might ordinarily conduct a review under the abuse of discretion standard. Pursuant to the Ninth Circuit's burden shifting analysis

> If . . . the program participant presents material, probative evidence, beyond the mere fact of [an] apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary, a rebuttable presumption arises in favor of the participant. The plan then bears the burden of rebutting the presumption by producing evidence

> to show that the conflict of interest did not affect its decision to deny or terminate benefits. If the plan fails to carry this burden of rebutting the presumption, we review de novo its decision to deny benefits.

*Tremain*, 196 F.3d at 976. As of its October 18 Order, this court was not yet satisfied that plaintiff had presented sufficient evidence to show that any Sun Life self-interest caused a breach of its fiduciary obligations to plaintiff. But it expressed concern that Sun Life had closure and termination goals that tended to show self-interest affected claims decisions. Accordingly, it granted limited discovery into the existence of an actual conflict of interest.

### B. Discovery to Date

At the completion of that limited discovery, plaintiff has discovered that Steve Bailey, the manager of the LTD claims department at the time the June 2002 lottery email was sent, did not become the direct manager until January 2002. Before that, Kenneth Arruda directly managed that department. Through depositions of Bailey and Michael Shunney,[1] Sun Life's designated 30(b)(6) witness, that "Kick It Up a Notch" was not a program. Instead, it was a slogan designed to motivate Sun Life employees. Plaintiff argues that, rather than motivating Sun Life claims personnel to work harder, as claimed by Bailey, the originator of the "Kick It Up a Notch" slogan, the focus was on getting claims personnel to terminate or close more claims in order to ensure Sun Life's profitability. Although discovery to date has produced two emails expressing termination/closure goals in addition to the June 2002 lottery email that originally caused the court concern, plaintiff contends that it is unlikely that all of the directives from Sun Life management to claims personnel were made in conjunction with the "Kick It Up a Notch" slogan. Further discovery is required, she contends, to adequately determine the extent of the alleged conflict.

Plaintiff also deposed Sandy DeCoff, as the claims examiner subject to Bailey's supervision. DeCoff was the examiner that reviewed plaintiff's claim and who ultimately wrote the final denial letter.[2] Plaintiff does not appear to base her request for additional discovery DeCoff's deposition.

### C. Additional Discovery

---

[1] Bailey reported directly to Shunney, who was, in 2002, the Vice President of the Group Insurance division.

[2] DeCoff is no longer a Sun Life employee.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR FURTHER DISCOVERY– 03-04926 RMW
MAG                                             4

Plaintiff seeks to discover other evidence regarding the extent to which Sun Life communicated its financial goals to its claims personnel. To that end, plaintiff seeks (1) to depose Kenneth Arruda; (2) all communications from Bailey to Arruda sent between February 16, 2001 and November 27, 2002 that refer to terminations, closures, or financial performance of the group disability department; (3) all communications (apparently without limitation) from Bailey or Arruda to employees of the group disability department during that same period; (4) additional statistical data regarding Sun Life's claims. In addition to the statistical data previously ordered produced, plaintiff seeks monthly data on (a) pending cases, (b) backlog cases (if kept); (c) approved cases; (d) reserves; (e) profits for the month; (f) denied cases; and (g) reopens.[3]

Much of the additional discovery plaintiff requests relates to Sun Life's financial interest and the impact of that financial interest on the claims process. "Though the claimant obviously has a financial interest in getting the money, while the plan has a financial interest in keeping it, that alone cannot establish conflict of interest in the administrator, because it would leave no cases in the class receiving deferential review under *Firestone*." *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 876 (9th Cir. 2004). Here, however, plaintiff contends that Sun Life emphasized its financial performance and rewarded its claims personnel only when they resolved claims in a manner that benefitted Sun Life's financial performance: namely, closures or terminations of claims. To determine whether this was so, the court authorized discovery into awards or incentives given for terminations/closures, including the "Kick It Up a Notch" program for the entire period relevant to plaintiff's claim in its October 18 Order.[4] Plaintiff contends that additional discovery into Sun Life's financial data is necessary in order to determine whether those goals were communicated to claims staff and impacted the claims determination process. The court disagrees. Whatever Sun Life's financial interest, the crucial inquiry is whether that interest translated into goals communicated to the claims personnel in a way that resulted in a claim resolution in plaintiff's case that favored Sun Life's interest over the beneficiary's.

However, because the previous discovery was limited to incentive and awards programs and plaintiff's discovery to date demonstrates that "Kick It Up a Notch" was not a program but a slogan, the court will

---

[3] The court previously ordered, and Sun Life has produced, monthly statistical data from December 1999 through December 2003 regarding new claims, terminations, and closures.

[4] Although plaintiff first submitted her claim in December 2000 and received a second denial of that claim in November 2002, the court permitted discovery regarding awards and incentives for terminations/closures from January 2000 through December 2003.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR FURTHER DISCOVERY– 03-04926 RMW
MAG                              5

1   authorize further limited discovery into whether goals regarding terminations and closures were actually
2   communicated to relevant long-term disability claims personnel irrespective of whether those goals were part
3   of an official incentive program. Specifically, Sun Life is ordered to produce email announcements or other
4   written communications sent to Sandra DeCoff between January 1, 2002 and November 27, 2002 from the
5   director of that group (Bailey or Arruda, depending who was director of the group at the time) communicating
6   termination and closure goals. January 1, 2002 precedes the introduction of the "Kick it Up a Notch" slogan,
7   the first evidence plaintiff presents that termination and closure goals were communicated to LTD personnel,
8   by a month and a half; November 27, 2002 is the date of the final denial of plaintiff's claim.

9         To be clear, this additional discovery only applies to emails and other written communications from the
10  director of the LTD group on which DeCoff is designated a named recipient. This additional discovery, in
11  conjunction with the previously-ordered discovery regarding actual award or incentives given for terminations
12  and closures, will assist the court in determining whether Sun Life articulated closure and termination goals that
13  may have resulted in an actual conflict of interest with respect to plaintiff's claim.

14        The court is satisfied that the statistical data provided to date demonstrates the level of terminations and
15  closures during the relevant timeframe. It finds that the additional statistical data plaintiff seeks regarding
16  pending cases, backlog cases, approved cases, reserves, profits for the month, denied cases, and reopens is
17  confidential information and concludes that requiring defendants to produce it at this stage of the litigation is
18  unnecessary and would be unduly burdensome. With the limited exception of the number of claims approved
19  in February 2002 and how many of those approvals came after the February 26, 2002 Bailey email, AR 590-
20  91, plaintiff's request for additional statistical data is denied.

21  ### III.  ORDER

22        For the foregoing reasons, the court grants in part and denies in part plaintiff's request for additional
23  discovery. Plaintiff is permitted 60 days to conduct discovery into the written communications of which DeCoff
24  was a recipient regarding termination or closure goals as set forth above. Sun Life shall also provide to plaintiff
25  the total number of claims approved in February 2002 and how many of those approvals were made after the
26  February 26, 2002 Bailey email. Sun Life shall produce items responsive to this order within 30 days of the
27  date of the order. The case management conference presently scheduled for July 29, 2005 shall be
28  rescheduled for October 14, 2005 at 10:30 a.m. Plaintiff shall file a supplemental brief on the standard of

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR FURTHER DISCOVERY– 03-04926
RMW
MAG                                             6

1  review by September 9, 2005.  Sun Life shall file its response by September 23, 2005.  Plaintiff's response,
2  if any, shall be filed by September 30, 2005.
3
4
5  DATED:       7/8/05                                         /s/ Ronald M. Whyte
                                                              RONALD M. WHYTE
6                                                             United States District Judge

1 | **Notice of this document has been electronically sent to:**

2 | **Counsel for Plaintiff(s):**

3 | Ronald Glenn Dean     rdean@74erisa.com

4 | **Counsel for Defendant(s):**

5 | Maria A. Tahmouresie     mtahmouresie@barwol.com

6 |
7 | Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

8 |
9 |
10 | **Dated:**     7/8/05                                  /s/ MAG
                                                            **Chambers of Judge Whyte**
11 |